PER CURIAM.
We granted certiorari in this case to review an alleged conflict in the holding of the Court of Civil Appeals and prior holdings of this Court and the Court of Civil Appeals. The alleged conflict arises out of the following language in the Court of Civil Appeals’ opinion:
“As concerns the 67% loss of ability to earn, we point out that the determination of a percentage of permanent partial disability is for the trial court to determine from all the evidence before it. Gibson v. Southern Stone Co., 518 So.2d 730 (Ala.Civ.App.1987). Further, we note that post-injury earnings are but one factor for the court to consider in determining whether there has been a loss of earning capacity. Lankford v. International Paper Co., 454 So.2d 988 (Ala.Civ.App.1984). Other factors include: an increase in general wage levels since the time of the accident, longer hours worked by claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable character of post-injury earnings. Lankford, 454 So.2d 988.”
Canterbury Electric Company contends that the above-cited language is in conflict with Jim Walter Resources, Inc. v. Hall, *1067 516 So.2d 690 (Ala.Civ.App.1987), and Lankford v. International Paper Co., 454 So.2d 988 (Ala.Civ.App.1984). Those two cases, petitioner argues, stand for the proposition that post-injury earnings that equal or exceed pre-injury earnings create a presumption that there has been no loss of earning capacity when the employee fails to offer evidence establishing that post-injury earnings are an inaccurate measure of lost earning capacity.
Jim Walter Resources and Lankford cited this Court's opinion in Goodyear Tire & Rubber Co. v. Downey, 266 Ala. 344, 96 So.2d 278 (1957), concerning the rebuttable presumption created when post-injury earnings equal or exceed pre-injury earnings. In that opinion, this Court stated:
“ ‘It is uniformly held, therefore, without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of actual post-injury earnings equalling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things; increase in general wage levels since the time of [the] accident; claimant’s own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.
“ ‘The ultimate objective of the disability test is, by discounting these variables, to determine the wage that would have been paid in the open labor market under normal employment conditions to claimant as injured, taking wage levels, hours of work, and claimant’s age and state of training as of exactly the same period used for calculating actual wages earned before the injury. Only by the elimination of all variables except the injury itself can a reasonably accurate estimate be made of the impairment of earning capacity to be attributed to that injury.’ ”
266 Ala. at 348, 96 So.2d at 281-82 (quoting 2 Larson’s Workmen’s Compensation Law § 57.21).
The trial court’s order, in pertinent part, states:
“The defendant asserted the defense of post-injury employment at a wage equal to or greater than the wage at time of injury. The plaintiff testified that this was correct but [that] only when coworkers from the union hall would assist him, was he able to perform and that when he did work, he worked in pain, under the influence of pain pills and muscle relaxers, and with co-workers’ assistance. Independent testimony substantiates the plaintiff’s testimony as to the need of assistance and the number of jobs since the injury. The plaintiff further testified that he had received one job as foreman but [that] it was strictly a personal'favor [, which testimony] defendant did not rebut. Plaintiff testified that the availability of jobs he could perform [was] unpredictable and [that the duration of such jobs was] unknown. The Court, therefore, finds that the post-injury employment is but one factor to consider in determining loss of earning capacity and an employee is not to be penalized for working where he is not totally disabled. The Court further finds that the plaintiff’s ability to be employed is diminished.”
After a review of the trial court’s order and of the entire record, it is apparent to us that evidence was presented to rebut the presumption that the claimant’s earning capacity was commensurate with his post-injury earnings. The statement in the Court of Civil Appeals’ opinion, while not a misstatement of the law, is an incomplete statement; it fails to acknowledge the presumption that attaches when “post-injury earnings equal or exceed ... earnings at the time of injury.” Lankford, 454 So.2d at 991. Any alleged conflict, however, has *1068 been resolved; therefore, the writ of certio-rari is due to be quashed.
WRIT QUASHED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON and STEAGALL, JJ., concur.