This is a workmen's compensation case. *Page 457 
In October 1989, Douglas P. Riddle filed a complaint against U.S. Steel Mining Company, Inc. (USM), for workmen's compensation benefits, alleging an on-the-job injury. Following ore tenus proceedings, the trial court found, inter alia, that Riddle had sustained a 31% loss of earning capacity and awarded benefits, although Riddle continued working for USM and his post-injury earnings exceeded his pre-injury earnings; hence, this appeal.
On appeal, USM contends that Riddle did not sufficiently rebut the presumption that he had sustained no loss of earning capacity because he returned to the same job and his post-injury earnings exceeded his pre-injury earnings. Additionally, USM also contends that because this case was pending on May 19, 1992, when the Workers' Compensation Law (Workers' Act) (1992 Ala. Act, No. 92537), went into effect, this court's standard of review should be in accordance with Ala. Code 1975, § 25-5-81(e), and not in accordance with theWorkmen's Compensation Law (Workmen's Act) in force at the time of the injury, namely, Ala. Code 1975, § 25-5-81(d), and the case law thereunder.
We first address the issue regarding the appropriate standard of review. Prior to the Workers' Act, appeals of workmen's compensation cases were governed by § 25-5-81(d), which states that "[f]rom such order or judgment, any aggrieved party may, within 42 days thereafter, appeal to the court of civil appeals and such review shall be as in cases reviewed by certiorari." Both parties correctly acknowledge that review by certiorari of workmen's compensation cases is a two-step process. ContainerCorp. of America v. Lucas, 598 So.2d 971 (Ala.Civ.App. 1982). This court must first determine if there is any legal evidence to support the trial court's findings. If such evidence is found, we must determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte EastwoodFoods, Inc., 575 So.2d 91 (Ala. 1991).
The Workers' Act was signed into law May 19, 1992; however, it specifically provided that procedural matters governing the determination of disputed claims as codified in Ala. Code 1975, § 25-5-81, were to be implemented on August 1, 1992. Thus, USM argues that inasmuch as the trial court's ruling was rendered August 13, 1992, the applicable standard of review is §25-5-81(e), viz.:
 "(e) Review. — From an order or judgment, any aggrieved party may, within 42 days thereafter, appeal to the Court of Civil Appeals and review shall be as in cases reviewed as follows:
 "(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
 "(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."
It is undisputed that at the time of Riddle's 1986 injury and at the time of the January 1992 trial, the standard of review was that set forth in Ex parte Eastwood Foods, supra. USM argues that because the trial court's order was entered after the new standard of review provisions were implemented, the new standard of review should be utilized by this court. USM's reasoning is premised on the definition of the statute in question as a remedial statute.
Generally, no statute is to be applied retroactively absent clear expression by the legislature of such an intention.Ex parte Clayton, 552 So.2d 152 (Ala. 1989). Remedial statutes, however, or those relating to remedies or modes of procedure which do not create new rights or take away vested ones, are not within the legal conception of retrospective laws, and they operate retrospectively in the absence of language clearly showing a contrary intention. Street v. City of Anniston,381 So.2d 26 (Ala. 1980). Thus, if a statute is procedural in nature, it may be applied on appeal, even if the effective date of that statute occurred while the appeal was pending, and even if the effective date of the statute was after the judgment in the trial court. Ex parte Burks, 487 So.2d 905 (Ala. 1985).
Thus, we must decide whether the standard of review in the newly enacted *Page 458 
Workers' Act is truly remedial, and thus applicable retrospectively, or if it is substantive and therefore only prospectively operable. Our research has failed to disclose Alabama case law which addresses this precise question, i.e., what is the effect of a statute in an action in which its application is sought, which has an effective date subsequent to the injury, the filing of a complaint, or the trial of a cause, but prior to the issuance of a final decree and appeal of the cause. A subpart of this question involves whether certain presumptions and the burden of proof are substantive or merely procedural issues. If possible, a statute is to be considered as a whole and its related sections in pari materia.Letson v. Gadsden Civil Service Board, 356 So.2d 653
(Ala.Civ.App. 1978). Accordingly, the Workers' Act is to be considered in its entirety, and § 25-5-81(e), relating to the standard of review, presumption, or correctness and evidentiary standard, is so inextricably a part of the totality of the Workers' Act as to be an integral part of the substantive right created by the Workers' Act. Mindful that in some situations the requirement of substantial evidence and the lack of any presumption of correctness may be looked upon as relating solely to remedy, we think that in the instant case, it is a part of a substantive right. Southern Ry. v. Miller,285 F.2d 202 (6th Cir. 1960). Indeed, the United States Supreme Court, in Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817,82 L.Ed. 1188 (1938), and its progeny, has recognized that "presumptions (and their effects) and burden of proof are 'substantive.' "Dick v. New York Life Insurance Co., 359 U.S. 437, 446,79 S.Ct. 921, 927, 3 L.Ed.2d 935 (1959).
Thus, we conclude that the provisions of § 25-5-81(e) are substantive in nature and that, because the effective date came after the injury in question, the section may not be applied on appeal. See Kittrell v. Benjamin, 396 So.2d 93 (Ala. 1981). This is consistent with prior holdings that in workmen's compensation cases, because the employer and employee have implicitly contracted to abide by the compensation scheme in effect at the time of the injury, any attempt to amend the compensation schedule after the injury can have no bearing on the award given, and if such retrospective application is given to the amendment, then an unconstitutional impairment of contract obligations occurs. See Art. I, § 22, Const. of Ala. 1901; Harris v. National Truck Service, 56 Ala. App. 350,321 So.2d 690 (Ala.Civ.App. 1975). Accordingly, we conclude that § 25-5-81(e) does not apply in this appeal.
Regarding the earnings issue, we begin our analysis by recognizing that when an employee's post-injury earnings equal or exceed his earnings at the time of the injury, there exists a presumption of earning capacity commensurate with earnings.Marley Erectors, Inc. v. Rice, 585 So.2d 1379 (Ala.Civ.App. 1991). Such a presumption, however, may be rebutted by independent evidence of incapacity or evidence to indicate that the post-injury earnings are an unreliable basis for estimating earning capacity. Lankford v. International Paper Co.,454 So.2d 988 (Ala.Civ.App. 1984). Factors which would indicate that post-injury earnings are an unreliable basis for estimating earning capacity include an increase in general wage levels since the time of the accident; the claimant's own greater maturity or training; more hours worked by the claimant after the accident; the payment of disproportionate wages out of sympathy to the claimant; and the temporary and unpredictable character of post-injury earnings. Lankford,supra. The trial court found that Riddle had rebutted the presumption with evidence that (1) Riddle's post-injury increase in earnings resulted primarily through collective bargaining salary increases; (2) Riddle's working hours had increased since the 1986 accident; (3) Riddle was given a 5% impairment to his "right arm"; (4) Riddle received occasional assistance from co-employees in the performance of his job; and (5) Dr. William A. Crunk, a vocational rehabilitation expert, testified that Riddle had lost "access to a significant number of jobs that he could have performed prior to the injury."
There was evidence from USM's accountant regarding the collective bargaining wage increases received by all employees over the years. The evidence reflected that Riddle worked more hours since the injury. Riddle's physician testified that he removed the *Page 459 
distal end of the clavicle or the collarbone, resulting in a 5% impairment of the "upper extremity." Additionally, Dr. Crunk testified that he did not consider post-injury earnings to be a reliable basis for determining Riddle's loss of earning capacity, and that in his opinion, Riddle had a 31% loss of earning capacity based upon his age and education, the type of work he has done in the past, and the economic situation he may face.
Based upon the foregoing, we think a reasonable view of the evidence supports the findings and conclusions of the trial court; thus, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.