This is a workmen's compensation case.
Bobby S. Johnson filed an action against the City of Montgomery claiming that he was permanently partially disabled as a result of a job related injury incurred within the line and scope of his employment with the City as a fire fighter. After a hearing the trial court found that claimant had injured his knee on August 6, 1979 while on the job as a fire fighter for the City of Montgomery and determined that he was ninety percent permanently partially disabled from performing the duties of a fire fighter or any other employment for which he was adequately educated and trained. The court awarded claimant benefits for three hundred weeks based on a rate of $144.99 per week.
After its motion for new trial was overruled, the City sought review in this court.
The pertinent facts show that Bobby S. Johnson was a fireman for the City of Montgomery from December 1967 until August 1979. Claimant injured his right knee in 1971 by striking it against a jack on a fire truck during a regular training session for firemen. A report of this accident was filed with his superiors.
Although the knee troubled him on several occasions during the intervening eight years, claimant had no real difficulty with it until August 6-9, 1979. Claimant testified that at this time he was participating in a required calisthenics program for firemen when he injured his right knee. He informed his supervisor and several fellow firemen that same day that he had injured his knee and that it was swollen and was hurting him. The swelling and pain continued and after about two weeks claimant saw Dr. J.H. Armstrong. Later, surgery was performed on the right knee by Dr. M. Bonner Engelhardt, an associate of Dr. Armstrong.
Dr. Engelhardt stated that claimant's right knee had marked inflammation of the lining and torn lateral cartilage. The cartilage was surgically removed. It was the doctor's opinion that the torn cartilage was caused by a twisting injury to the knee, not a direct blow to the knee. The doctor said that the claimant has had a good recovery and suffers a two percent physical impairment to the body. He said, however, that claimant was disabled from being a fire fighter and could not perform other tasks requiring climbing, squatting, or jumping. Dr. Engelhardt did testify that claimant's condition was a long-standing one and had gotten progressively worse.
Appellant's first and second contentions are that claimant's only job related injury occurred in 1971, which was prior to Act No. 565, Acts 1975, and that the problems appellant encountered in 1979 were the results of the 1971 accident. Hence, the City is not liable for the 1979 knee problems.
Act No. 565, codified as § 25-5-13, Code 1975, and enacted into law in 1975, provides that employees of all counties and all municipalities with populations in excess of two thousand shall be governed by and have available to them the provisions of the Alabama Workmen's Compensation Law. *Page 246 
Appellant argues that the only evidence of a job related injury suffered by claimant occurred in 1971, which would have been before it was subject to the workmen's compensation law and it is, therefore, not liable to claimant for any benefits. Furthermore, according to the City, there is no evidence that a second knee injury was suffered by claimant in 1979. At most, the evidence shows a deterioration of the cartilage in the knee to the point that it became necessary to have surgery.
The trial court found that claimant suffered a second injury to his right knee in August 1979 while he was acting within the line and scope of his employment. Such a finding, if supported by the evidence, would make the appellant liable to claimant for workmen's compensation benefits by virtue of Act No. 565,supra.
In reviewing the findings of fact made by a trial court in a workmen's compensation case, this court is concerned only with whether there is any legal evidence to support those findings.Blackmon v. R.L. Zeigler Co., Ala.Civ.App., 390 So.2d 628,cert. denied, Ala., 390 So.2d 635 (1980).
The claimant testified that during the first part of August 1979, i.e. sometime during the period August 6 through August 9, 1979, while engaged in calisthenics at the firehouse as ordered by the City of Montgomery, he twisted his right knee. He suffered pain and swelling in the knee that day. He told his wife of the injury upon returning home from work. He also showed the swollen knee to a supervisor and fellow firemen at the firehouse. Two weeks later he had surgery on the knee.
The physician who operated on claimant's knee testified that the torn cartilage in claimant's knee was the result of a twisting injury, not an injury resulting from a direct blow to the knee. The 1971 injury resulted when claimant attempted to climb on a fire truck and struck his right knee against a jack on the truck. We consider the evidence sufficient to support the finding that claimant had suffered a second injury to his right knee in August 1979.
Appellant next says that claimant failed to give the proper notice to his employer of the injury to his knee in August 1979.
The established rule in Alabama is that actual notice is the equivalent of the notice required by § 25-5-78, Code 1975. B.F.Goodrich Co. v. Martin, 47 Ala. App. 244, 253 So.2d 37, cert.denied, 287 Ala. 726, 253 So.2d 45 and 287 Ala. 726,253 So.2d 46 (1971). In Price Ceiling, Inc. v. Ray, Ala.Civ.App.,394 So.2d 58 (1981), we held that notice of an injury to an employee received by the employer through a supervisor from a fellow employee satisfied the actual notice rule.
In the case at bar the claimant testified that he told a supervisor of the injury and showed him the swollen knee on the day of the injury. We believe such notice satisfies the actual notice rule set out above.
Another argument made by the City is that the trial court erred in finding that claimant was ninety percent permanently partially disabled because there is no evidence to support such a finding.
Appellant contends that claimant is presently employed earning about $120.00 a week as a security guard; therefore, he could not be ninety percent permanently partially disabled since he is now earning approximately fifty-eight percent of what he was earning at the time of his injury.
In Goodyear Tire Rubber Co. of Alabama v. Downey, 266 Ala. 344, 96 So.2d 278 (1957), the supreme court rejected the suggestion that the test of an employee's ability to earn is a comparison between the earnings before and after the injury. It said:
 [T]he test is the difference between the average weekly earnings at the time of the injury and the average weekly earnings the employee "is able to earn in his partially disabled condition". It seems to us that this clearly excludes any notion of limiting the determination of a loss in ability to earn to the one question of wages actually earned after the injury as compared with those earned before. *Page 247 
There are other factors which may be considered.
Then the court quoted with approval the following from Larson's Workmen's Compensation Law, Vol. 2, § 57.21, pp. 4-6:
 "[A]ctual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things: increase in general wage levels since the time of accident; claimant's own greater maturity or training; longer hours worked by claimant after the accident; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings."
In the absence of evidence proving that post-injury earnings are an unreliable basis for estimating earning capacity, the presumption that actual post-injury earnings are commensurate with earning capacity stands unrebutted.
In the case at bar there is no proof of the existence of any one or more of the variables mentioned in Downey. Thus, capacity created by the proof of actual post-injury earnings is unrebutted. The trial court's finding that claimant had a ninety percent reduction of his earning capacity due to his job-connected injury is without support in the evidence, and its judgment must be reversed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.