The plaintiff, Judy Tittle, brought an action against the defendant, Custard Insurance Adjusters, Crawford Risk Management Services, and Pamela Weems, a rehabilitation consultant, alleging the negligent and wanton undertaking of rehabilitation services, fraudulent misrepresentation, tortious interference with the physician-patient relationship, fraud, invasion of privacy, and outrageous conduct.[1] Specifically, Tittle contends that Custard undertook to ensure that certain rehabilitation services were provided to her following an on-the-job injury and asserts that Custard (1) refused to permit certain treatment at the Brookwood Pain Clinic, (2) refused to pay for surgery scheduled by one of Tittle's treating physicians, and (3) on one occasion accompanied Tittle to her doctor's office and acted in a manner calculated to embarrass and humiliate Tittle. Custard denied the allegations and moved for summary judgment. The trial court granted Custard's *Page 881 
motion and directed that its order be certified as final pursuant to Rule 54(b), A.R.Civ.P.
The facts, in pertinent part, are as follows: Tittle sustained a work-related injury on May 1, 1987, involving her knees, right ankle, left hip, and back. Casualty Reciprocal Exchange ("Casualty") is the workmen's compensation carrier. Casualty hired Custard to act on its behalf in processing medical and hospital bills and in submitting status reports. Casualty also retained Crawford to supervise the medical management of Tittle. Crawford consists of qualified medical experts who evaluate and establish a continuing relationship with a workmen's compensation claimant. Pamela Weems is an employee of Crawford. Crawford's role, through its representative, Pamela Weems, was to accompany Tittle to her physician's appointments, to monitor appropriate treatment regarding her injury, and, on occasion, to recommend treatment or consultation. Crawford and Custard are adjusting companies performing separate duties on behalf of Casualty regarding Tittle's injury. Crawford would report to Custard, who would then report directly to Casualty.
Ala. Code 1975, § 25-5-52, sets out the exclusivity provision of the Workmen's Compensation Act. That section reads as follows:
 "No employee of any employer subject to this article, nor the personal representative, surviving spouse or next of kin of any such employee shall have any right to any other method, form or amount of compensation or damages for any injury . . . occasioned by any accident proximately resulting from and while engaged in the actual performance of the duties of his employment and from a cause originating in such employment or determination thereof other than as provided in this article."
However, this Court has stated that the exclusivity provisions of the Act do not prohibit an action for intentional tortious conduct, i.e., intentional fraud and outrageous conduct. Lowman v. Piedmont Executive Shirt Manufacturing Co.,547 So.2d 90 (Ala. 1989). "[T]he Act should not be an impervious barrier, insulating a wrongdoer from the payment of just and fair damages for intentional tortious acts only very tenuously related to workplace accidents." Lowman, supra, at 94, citing Carpentino v. Transport Ins. Co., 609 F. Supp. 556
(D.C.Conn. 1985). Nevertheless, in order to ensure against borderline or frivolous claims, Tittle must meet a higher burden or make a stronger showing than that required by the "substantial evidence rule" as it applies to issues in regard to tort claims generally. Lowman, supra. In order for her claim to go to the jury, Tittle must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of the claim. Lowman, supra.
Therefore, the question before this court is whether Tittle met her burden of proof. In other words, did she present clear and convincing evidence of the alleged claims against Custard?
We find that, in view of the totality of the circumstances, Tittle has not presented clear and convincing evidence against Custard to be entitled to have her claims presented to a jury. As stated in Lowman, supra, at 95, "in carving out this exception for allowing intentional tort claims . . ., we are constrained, in accommodation to the exclusivity provisions of the Act, to rule out all questionable claims." Here, Tittle's contact was with Crawford, through its representative, Weems, In fact, Tittle had no face-to-face contact with Custard. Tittle presented no evidence of any substantial delays in payments of her medical bills caused by any tortious conduct on Custard's part. Rather, the evidence shows that Custard forwarded her medical bills to Casualty for payment and that any delay occurred only as a result of the verification process, or because Casualty failed to pay them promptly. Additionally, the record reveals that Custard even wrote to Casualty on several occasions when it became aware that a bill had not been paid.
Suffice it to say that Tittle did not meet her burden of proof in order to have her claims submitted to the jury and the trial *Page 882 
court did not err in entering a summary judgment in favor of Custard. Tittle simply did not present any evidence that Custard committed any intentional tort against her that would entitle her to recover. At most, we find that Tittle's complaint was for "insults, indignities, threats, annoyances, petty oppression or other trivialities," none of which entitles her to a recovery. See Continental Casualty Ins. Co. v.McDonald, 567 So.2d 1208 (Ala. 1990).
The judgment of the trial court in this case is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] The trial court entered a partial summary judgment for both Crawford and Weems as to all claims except the one based on tort of outrage. That claim remains pending as to these two defendants.